UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

TRACY WARD, through her next friend, Stellar Jackson,

    plaintiff,

  v.

OUR LADY OF THE LAKE HOSPITAL, INC.

    defendant.

---

**CASE NO.**

**JUDGE**

**JURY TRIAL DEMANDED**

## **COMPLAINT**

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Jennifer M. Coco (LA #34492)
jcoco@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

# PRELIMINARY STATEMENT

1. Tracy Ward is a profoundly deaf individual who communicates primarily in American Sign Language ("ASL"), which is her most effective means of communication. Ms. Ward is also an individual with cognitive disabilities in the form of mild mental retardation. Ms. Ward has received emergency medical care on two separate occasions at Our Lady of the Lake Hospital Emergency Room. During both encounters with Our Lady of the Lake Hospital, Ms. Ward was denied necessary interpretation and communication services, and thereby denied effective communication in this medical setting.

2. Defendant, OUR LADY OF THE LAKE HOSPITAL, INC., has explicit notice of its need to accommodate persons with disabilities. To the extent Defendant was unaware of its obligation to accommodate, other plaintiffs have filed suit against the Defendant on November 23, 2016; June 21, 2017; August 2, 2017; and August 9, 2017, regarding allegations of deaf-related discrimination by the Defendant in the United States District Court for the Middle District of Louisiana. *See Labouliere v. Our Lady of the Lake Hospital, Inc.*, et. al., Case: 3:16-cv-00785-JJB-EWD; *Francois v. Our Lady of the Lake Hospital, Inc.*, Case 3:17-cv-00393-SDD-EWD; *Lockwood v. Our Lady of the Lake Hospital, Inc.*, Case 3:17-cv-00509-JJB-EWD; and *King v. Our Lady of the Lake Hospital, Inc.*, Case 3:17-cv-00530-JJB-RLB.

3. Ms. Ward brings this lawsuit seeking declaratory relief, compensatory and nominal damages, and attorneys' fees and costs to redress Defendant's unlawful discrimination and retaliation on the basis of disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116.

4. In addition to an award of compensatory damages, Ms. Ward seeks an award of nominal damages. It is Ms. Ward's position that an award of nominal damages would confer

significant civil rights to the public as a judgment in her favor against Defendant, regardless of the amount, would deter Defendant from discriminating against deaf individuals in the future.

## THE PARTIES

5. Plaintiff Tracy Ward (hereinafter "Ms. Ward"), by and through her next friend Stellar Jackson, brings this action and is an individual residing in the City of Baton Rouge, Louisiana. Ms. Ward communicates primarily in American Sign Language and is substantially limited in the major life activities of caring for oneself, hearing, speaking, learning, reading, communicating, and working, and is a qualified person with a disability within the meaning of the ADA, Rehabilitation Act, and Section 1557.

6. Effective December 29, 2015, Ms. Ward authorized her mother, Ms. Stellar Jackson, with Power of Attorney over her affairs. Specifically, Ms. Ward has executed a Mandate pursuant to Louisiana Civil Code Article 2989, conferring authority upon Ms. Jackson to, in part, appear before all courts on her behalf. Ms. Jackson brings this lawsuit on Ms. Ward's behalf as her next friend.

7. Defendant OUR LADY OF THE LAKE HOSPITAL, INC. (hereinafter "Defendant"), is a non-profit company doing business in Louisiana with a domicile of 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. OLOL owns, leases, and/or operates Our Lady of the Lake Hospital and Emergency Room, a hospital located at 5000 Hennessy Boulevard, Baton Rouge, Louisiana 70808. OLOL owns and operates a place of public accommodation under federal antidiscrimination law and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making OLOL subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act.

## JURISDICTION & VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Ms. Ward's claims arising under federal law.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

10. Ms. Ward is a profoundly deaf individual who communicates primarily through ASL. She does wear a hearing aid in her right ear, but this only enables her to hear very loud noises; it does not enable her to hear voices engaging in regular conversation.

11. Ms. Ward requires auxiliary aids and services to communicate effectively in a medical setting. Ms. Ward requires a sign language interpreter to translate and assist her with asking questions about the meaning of complex documents that are written in English or documents that use advanced medical terminology.

12. Ms. Ward is also an individual with cognitive disabilities in the form of mild mental retardation. Ms. Ward functions at a level of a ten to fifteen year old child. Ms. Ward requires information to be relayed simply and clearly.

13. Ms. Ward sought emergency medical treatment at Defendant's Emergency Room on two occasions: June 16, 2015 and May 14-15, 2016. The Defendant failed to provide Ms. Ward with an interpreter or other appropriate communication accommodations during either interaction.

14. On June 16, 2015, Ms. Ward sought emergency medical care for stomach pain and abnormal uterine bleeding. In its medical records, the Defendant's staff acknowledged that

Ms. Ward was deaf. However, the Defendant failed to offer Ms. Ward an interpreter. Instead, the Defendant relied on Ms. Ward's adult daughter to interpret.

15. The June 16, 2015 emergency medical visit did not represent a crisis situation for which drastic action was necessary and for which there was no time for Defendant's staff to procure an interpreter.

16. The Defendant's medical records acknowledge this, through a note in the records stating that while she was awaiting care, Ms. Ward was "sitting on a stretcher with cell phone and with plate of nachos."

17. Ms. Ward was discharged hours after arriving, with discharge instructions to follow up with her primary care physician.

18. On May 14-15, 2016, Ms. Ward again sought emergency medical care at the Defendant's emergency room, this time for abdominal and ankle pains. In the medical records, the Defendant's staff again acknowledged that Ms. Ward was deaf. Again, the Defendant failed to offer Ms. Ward an interpreter, and again relied upon Ms. Ward's adult daughter to interpret.

19. The May 14-15, 2016 emergency medical visit again did not represent a crisis situation for which drastic action was necessary, and for which there was no time for Defendant's staff to procure an interpreter.

20. The Defendant's medical records acknowledge this, through a note in the records stating that while she was awaiting care, Ms. Ward was "resting quietly on stretcher … no complaints of nausea or vomiting present."

21. Ms. Ward was discharged in the early morning hours of May 15, 2016, after arriving hours earlier in the late evening of May 14, 2016. She was given discharge instructions to follow up with her primary care physician and a podiatrist.

22. During both visits to Defendant's emergency room, Ms. Ward, by and through her family, requested that the Defendant provide Ms. Ward with an interpreter.

23. Upon information and belief, during both interactions, Defendant failed to provide Ms. Ward with an interpreter.

24. Because the Defendant failed to provide an interpreter for Ms. Ward, she was forced to rely on her adult daughter, Shinece Singleton, to serve as an informal interpreter.

25. Ms. Singleton is not a qualified sign language interpreter. Neither is Ms. Singleton a medical professional. Ms. Singleton is not sufficiently equipped to professionally translate for Ms. Ward, particularly in a medical setting with complex and technical terminology.

26. The Defendant's methods of communicating with Ms. Ward were not effective or appropriate. The Defendant's failure to provide auxiliary aids and services to communicate with Ms. Ward did not allow her to fully understand and discuss her various conditions, treatment options, or discharge instructions.

27. Upon information and belief, Defendant's medical staff made medical decisions for Ms. Ward without making sufficient attempts to fully discuss the options with her in a manner that accommodated her hearing and cognitive disabilities.

28. As a result of Defendant's refusal to provide a sign language interpreter and failure to accommodate her cognitive disabilities, Ms. Ward was not adequately advised of her care, medications, or treatment.

29. Ms. Ward was not able to fully understand the nature, scope, and seriousness of her condition(s).

30. Upon information and belief, during both visits to the Defendant's emergency room, Ms. Ward was given documents to sign. However, Defendant did not provide Ms. Ward

with a sign language interpreter to translate these documents for Ms. Ward. Nor did Defendant take any steps to simplify and explain complicated medical documents and information to Ms. Ward, given her cognitive disabilities. Defendant relied on her daughter, Ms. Singleton, to do so, but she lacked the necessary training and expertise to properly advise Ms. Ward. Without the aid of a qualified sign language interpreter or other communication accommodations, Ms. Ward was not able to fully understand the content of these documents.

31. Ms. Ward does not know what information she missed when the Defendant communicated with her without any accommodations for her multiple disabilities.

32. Defendant's failure to provide Ms. Ward with effective auxiliary aids and services caused Ms. Ward to experience anxiety, indignity, emotional distress, segregation, invasion of her civil rights, denial of self-determination, embarrassment, and inconvenience.

33. Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known of its obligations to provide accommodations to individuals with disabilities, including individuals who are deaf or have cognitive disabilities.

34. Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Ms. Ward greater levels of anxiety, indignity, emotional distress, segregation, denial of self-determination, embarrassment, and inconvenience than a hearing person or companion would be expected to experience.

35. Defendant, through its staff, employees, nurses, and/or doctors, failed to assess the communication abilities and needs of Ms. Ward.

36. Despite Defendant's explicit knowledge of its obligation to accommodate persons with disabilities – including individuals that are deaf and/or have cognitive disabilities –

Defendant did not take adequate steps to ensure that it provided effective communication to Ms. Ward.

37. As a result of Defendant's failure to ensure effective communication with Ms. Ward, she received services that were inferior to those provided to non-disabled individuals.

38. Defendant discriminated against Ms. Ward with deliberate indifference to her communication needs.

39. Based on the facts alleged above, Defendant intentionally discriminated against Ms. Ward.

40. Further, Defendant was purposeful in its choices, which is sufficient to constitute intentional discrimination under the ACA.

41. In the alternative, Defendant is liable under Section 1557 of the ACA pursuant to the case of *Kelly v. Boeing Petroleum Servs., Inc.*, in which the Fifth Circuit held that the Supreme Court case of *Alexander* expressly rejected the notion that a plaintiff is required to show intentional discrimination to establish a prima facie case of disparate impact discrimination. 61 F.3d 350, 365 (5th Cir. 1995).

42. The harm sustained by Ms. Ward herein is the expected and foreseeable consequence of Defendant's failures to comply with the requirements and mandates of the ACA. The statute and accompanying regulations exist to ensure that those with communication limitations and other disabilities will have full use of places of public accommodations. When Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Ward in this lawsuit.

43. By and through Defendant's failures to make its healthcare services meaningfully

accessible to individuals who are deaf and/or have cognitive disabilities, Defendant has committed disparate impact discrimination sufficient to state a claim for damages under the ACA.

**VIOLATIONS OF SECTION 1557 OF THE
PATIENT PROTECTION AND AFFORDABLE CARE ACT**

44. Ms. Ward repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

45. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 was in full force and effect and applied to Defendant's conduct.

46. At all times relevant to this action, the ACA, at 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

47. At all times relevant to this action, Ms. Ward had substantial limitations to the major life activities of caring for oneself, hearing, speaking, learning, reading, communicating, and working, and was an individual with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of the ACA, 42 U.S.C. § 18116.

48. At all times relevant to this action, Ms. Ward's primary language for communication was American Sign Language and not English.

49. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

50. Pursuant to Section 1557 of the ACA, "an individual shall not, on the ground

prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

51. Defendant discriminated against Ms. Ward solely on the basis of disability, by denying her meaningful access to the services, programs, and benefits that Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

52. Defendant discriminated against Ms. Ward by failing to ensure effective communication through the provision of qualified sign language interpreters on-site and/or through other auxiliary aids and services, like a Video Remote Interpreting (VRI) machine.

53. Defendant discriminated against Ms. Ward by denying her requests for reasonable accommodations.

54. Ms. Ward is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

55. Ms. Ward is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Ward respectfully prays that this Court grant the following relief against Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices subjected Ms. Ward to unlawful discrimination in violation of Section 1557 of the ACA;

B. Award to Ms. Ward:

   i. Compensatory and nominal damages pursuant to the ACA;

   ii. Reasonable costs and attorneys' fees pursuant to the ACA;

   iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

   iv. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Ms. Ward demands a trial by jury for the issues of (1) the injuries she suffered as a result of defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: April 11, 2018

Respectfully Submitted,

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Jennifer Coco (LA # 34492)
jcoco@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Andrew D. Bizer
ANDREW D. BIZER